**AFFIDAVIT IN SUPPORT OF AN**

**APPLICATION FOR AN ARREST WARRANT**

I, Thomas J. Zukauskas, do hereby depose and state as follows:

1. I am a Special Agent of the Federal Bureau of Investigation ("FBI") and have been so employed for twelve years. I am currently assigned to the Boston Division of the FBI in Boston, Massachusetts. More specifically, I am assigned to the Boston FBI Violent Crimes Task Force ("VCTF"), which comprises personnel of the FBI, Massachusetts State Police, and the Boston, Malden, Saugus, Dedham, and Somerville Police Departments.

2. As a Special Agent with the VCTF, I have investigated numerous violent crimes, including but not limited to cases involving armed robberies, kidnapping, bank robberies, and sexual assaults. I have also received specialized training regarding investigative techniques, evidence collection, and evidence preservation. Throughout my employment with the FBI, I have participated in investigations involving the execution of arrest warrants.

3. Having so said, I make this affidavit in support of a criminal complaint charging Louis D. Coleman, III ("Coleman")

DOB XX/XX/1986, with kidnapping, resulting in death, in violation of 18 U.S.C. § 1201(a)(1).

4. The facts stated herein are based on my own personal knowledge and on photographs and video that I have personally viewed, as well as information provided to me by other law enforcement personnel involved in the investigation. In submitting this affidavit, however, I have not included each and every fact known to me about this investigation, but only the facts which I believe are sufficient to establish the requisite probable cause.

## Overview of Investigation

5. On Tuesday February 26, 2019, at approximately 5:30 p.m., an individual, later identified as the father of Jassy Correia ("the father"), reported to the Boston Police Department that his daughter, Jassy Correia ("the victim"), DOB xx/xx/1996, was missing. A friend of the victim accompanied the father. The friend, who was with the victim on the night of February 23 through February 24, 2019, stated she and the victim had gone to the Venu nightclub ("Venu"), located on Warrenton Street in Boston, with some friends, and that she had not seen the victim since leaving the club on early Sunday morning, February 24, 2019.

6. The friend stated that the victim was wearing an orange jumpsuit and a blue denim jacket ("the jacket"). The friend further stated that the jacket had a picture of red lips and wings on its back.

### Video Surveillance in Boston

7. Law enforcement officials obtained video surveillance of the sidewalk area on Tremont Street near Venu. The video shows, among other things, that on Sunday morning, February 24, 2019, the victim was on the sidewalk at approximately 2:14 a.m. and interacted with several people. The video shows that, at approximately 2:16 a.m., a male approached the victim and interacted with her. The video shows that, shortly afterwards, the male and the victim left the area walking together. Additional surveillance video show that the male and the victim proceeded to and then entered a red sedan ("the red sedan"). The red sedan then left the area.

8. Investigation revealed that, earlier in the night, Coleman entered Venu and produced a Rhode Island driver's license, which security personnel at Venu scanned. Coleman's driver's license reflected Coleman's address as 95 Chestnut Street, Providence, Rhode island. Law enforcement and I have compared the image from Coleman's driver's license with the

aforementioned video surveillance and determined that the male who walked away with the victim was Coleman.

## Video Surveillance at 95 Chestnut Street, Providence, Rhode Island

9. Law enforcement learned that Coleman rented apartment 602 of 95 Chestnut Street, Providence, Rhode Island, which is on the sixth floor of the building. Law enforcement obtained video surveillance footage from the building's parking lot, the lobby, and the sixth floor hallway.[1]

**February 24, 2019**

10. The video surveillance footage from the early morning of Sunday, February 24, 2019, shows that a red sedan, consistent in appearance with the red sedan referred to in paragraph 7, entered the building's parking lot at approximately 4:15 a.m. The operator of the vehicle (Coleman) parked the red sedan, exited the red sedan, and returned to the red sedan a short time later carrying a light-colored blanket. A short time later, Coleman walked from the red sedan towards the front of the building carrying a body with long hair and orange pants. Based on my review of the surveillance footage from the apartment

---

[1] Law enforcement has determined that the time-stamp on all of the surveillance video from 95 Chestnut Street is approximately 1 hour ahead of the actual time of the events depicted. The times listed in the affidavit are the actual times.

4

building and my review of the surveillance footage from the area near Venu from a few hours earlier, and the close temporal proximity of these events, and in light of my training and experience, I believe that this footage shows Coleman carrying the victim into his apartment building.

11. Video footage from the building's lobby shows that, at approximately 4:27 a.m., Coleman entered the building carrying a woman's body. I am familiar with the appearance of the victim and recognize the woman as the victim. Coleman put the victim on the floor and dragged the victim to the building's elevator. The victim was naked from the waist up and was wearing orange pants. The victim was not moving and her body was limp.

12. Video footage from the building's sixth floor hallway shows that, at approximately 4:29 a.m., Coleman exited the elevator and dragged the victim in the direction of apartment 602.

**February 26, 2019**

13. Video surveillance shows that on Tuesday, February 26, 2019, Coleman entered 95 Chestnut Street with plastic shopping bags consistent in appearance with Walmart shopping bags. Law enforcement later obtained video surveillance, and a receipt demonstrating that Coleman had purchased the following items

from the Walmart in Providence, Rhode Island on February 26, 2019:

- Three Tyvek suits;
- Duct tape;
- Two candles;
- Electrical tape;
- One mask;
- Surgical gloves;
- Two pairs of safety goggles;
- An odor respirator; and
- CLN Release Bleach Bath.

Law enforcement additionally determined that Coleman had been operating a red Buick sedan in the Walmart parking lot at that time. Further investigation determined that Coleman did not have an automobile registered in his name, but that a 2016 red Buick sedan was registered to Coleman's mother in California. Law enforcement determined that the California registration plate was 7WYAXXX.[2]

**February 27, 2019**

14. Video surveillance shows that, on Wednesday, February 27, 2019, at approximately 9:58 p.m., Coleman entered 95 Chestnut Street with a large dark-colored suitcase ("the suitcase") with bright blue piping. The suitcase appeared to be in new condition with sales tags affixed.

---

[2] The California registration plate number is known to law enforcement.

**February 28, 2019**

15. Video surveillance shows that, on Thursday, February 28, 2019, at approximately 1:15 a.m., Coleman wheeled the suitcase from the direction of apartment 602 towards the elevator. A few minutes later, Coleman exited the elevator and wheeled the suitcase out of the building. Video surveillance from the parking lot shows, a short time, later, Coleman wheeled the suitcase across the parking lot and placed the suitcase into the trunk of the red sedan. Coleman appeared to have difficulty lifting the suitcase into the trunk of the red sedan.

16. Additional video surveillance shows that, on several occasions between approximately 2:44 a.m. and approximately 4:02 a.m., Coleman exited the building with other items including: trash bags; cardboard boxes; a bottle of bleach; a black laptop case; a computer tower; and a small dark-colored duffle bag.

17. Later in the day on February 28, 2019, law enforcement officers executed a search warrant at Coleman's apartment. During the execution of the search warrant, law enforcement officers recovered, among other things: a California driver's license in the name of Coleman; a checkbook in the name of Coleman with a California address; two packages of hooded coveralls; and two respirator masks. Law enforcement also observed a light-colored sofa with four large cushions. The cover for one of the cushions was missing.

18. Additionally, law enforcement officers searched a dumpster outside of 95 Chestnut Street and recovered a number of items including: white trash bags; a bag containing plastic sheets; men's blue denim jeans with bleach stains and a belt; a white nylon hooded coverall; an empty box of baking soda; clear safety goggles; one respirator mask; duct tape packaging; rubbing alcohol; Walmart bags; multiple pairs of used plastic gloves; an empty package for an automobile air freshener; three empty packages for purifying charcoal; and a Scotch Brite scrub sponge.

### The Stop of the Red Sedan in Delaware
**February 28, 2019**

19. On Thursday, February 28, 2019, members of the Delaware State Police became aware that Coleman was the subject of a missing person investigation of the victim. At approximately 2:45 p.m., the Delaware State Police located and stopped a red Buick sedan with California registration 7WYAXXX on Interstate 95 South, near Wilmington, Delaware. The operator of the red sedan was Coleman.

20. Coleman was ordered out of the red sedan and asked by the Delaware State Trooper if anyone else was in the sedan. Coleman stated words to the effect, "She's in the trunk."

21. Law enforcement officers conducted a sweep of the vehicle and located, within the vehicle's trunk, a large dark-

colored suitcase with blue piping. I have observed photographs of the suitcase, and believe it to be the same suitcase referenced in paragraphs 14 and 15. Law enforcement opened the suitcase and observed a black plastic bag inside the suitcase. Inside the black plastic bag was a light-colored sofa cushion cover. Inside the cushion cover was the body of a woman who appears to be the victim, who was deceased. The victim, who had significant bruising and blood about her face, was bound with gray duct tape and had a white powdery residue over her body, believed to be baking soda.

22. A search warrant was later obtained and law enforcement officers recovered numerous items from the red sedan including the following:

- a dark-colored duffle bag;
- a pair of new long-handled loppers;
- a number of plastic garbage bags;
- multiple items of clothing;
- a Samsung cellphone;
- a red plastic gas container;
- a green butane lighter;
- a pair of black gloves;
- a number of charcoal air purifiers;
- a number of air fresheners;
- tinted safety glasses;
- plastic Walmart bags;
- work towels;
- a number of pairs of cloth work-gloves;
- a new set of De Walt pliers;
- a lap-top computer;
- a computer hard-drive or tower; and
- disinfectant wipes.

23. Photographs of the red sedan depict that the windshield is cracked in two locations on the passenger side, and that a white powdery substance, believed to be baking soda, was in the sedan's trunk.

24. Coleman was taken into custody and transported to the Delaware State Police Troop Two barracks. Coleman was booked and then placed into a holding cell. One of the troopers noted that Coleman had a large bandage on the right side of his face. The trooper asked Coleman, in substance, "That injury on your face, does it need to be addressed?" Coleman responded, in substance, "It's from the girl."

**Conclusion**

25. Based on the foregoing, I believe there is probable cause to believe that, on or about February 24, 2019, in the District of Massachusetts and elsewhere, Louis D. Coleman, III unlawfully seized, confined, inveigled, decoyed, kidnapped, abducted, and carried away and held for ransom and reward and otherwise a person, that is Jassy Correia, when said person was willfully transported in interstate commerce, and when Louis D. Coleman, III, travelled in interstate commerce in committing and in furtherance of the offense, resulting in the death of Jassy Correia, all in violation of 18 U.S.C. § 1201(a)(1).

_____
THOMAS J. ZUKAUSKAS
FBI SPECIAL AGENT

SWORN AND SUBSCRIBED TO BEFORE ME THIS 3RD DAY OF MARCH 2019.

_____
M. PAGE KELLEY
U.S. MAGISTRATE JUDGE